Rafey S. Balabanian (SBN 315962)
rbalabanian@edelson.com
Lily Hough (SBN 315277)
lhough@edelson.com
EDELSON PC
150 California Street, 18th Floor
San Francisco, California 94111
Tel: 415.212.9300
Fax: 415.373.9435

*Counsel for Plaintiffs and the Putative Class*

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION**

| | |
|---|---|
| BOSTON ROBOTIC HAIR RESTORATION, PLLC, and MELISSA R. SCHNEIDER, M.D., PC, individually and on behalf of all similarly situated individuals,<br><br>*Plaintiffs,*<br><br>*v.*<br><br>VENUS CONCEPT INC., a Delaware corporation, as successor in interest to RESTORATION ROBOTICS, INC.<br><br>*Defendant.* | **Case No.:**<br><br>**CLASS ACTION COMPLAINT FOR:**<br><br>**(1) Fraudulent Inducement**<br>**(2) Fraudulent Concealment**<br>**(3) Negligent Misrepresentation and/or Negligent Omission**<br>**(4) Violation of California's Consumer Legal Remedies Act**<br>**(5) Violation of California's Unfair Competition Law**<br>**(6) Violation of California's False Advertising Law**<br>**(7) Breach of Implied Warranty**<br>**(8) Breach of Contract**<br>**(9) Unjust Enrichment** |

## <u>CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL</u>

Plaintiffs Boston Robotic Hair Restoration, PLLC and Melissa R. Schneider, M.D., PC bring this Class Action Complaint and Demand for Jury Trial against Defendant Venus Concept Inc., based on the deceptive marketing practice of its ARTAS iX hair restoration system. Plaintiffs allege as follows upon personal knowledge as to themselves and to their own acts and experiences, and, as to all other matters, upon information and belief.

CLASS ACTION COMPLAINT                    1

**NATURE OF THE ACTION**

1.      Defendant is a medical technology company that markets and sells the ARTAS Robotic Hair Restoration System and ARTAS iX, a robotic device that assists physicians in performing follicular unit extraction ("FUE") surgery. FUE surgery is a widely practiced hair transplant procedure.

2.      FUE surgery can be broken down into three steps: first, the physician extracts healthy hair follicles, or hair grafts, from the patient, typically from the back or side or the patient's scalp (i.e., the "donor site"). Next, the physician makes small incisions into designated (often balding) areas (i.e., the "recipient" site). Finally, the physician implants the hair grafts from the donor site into the recipient sites. Manual FUE surgery is a tedious, time and labor-intensive process that relies on the physician's perfect hand-eye coordination.

3.      A company called Restoration Robotics, later acquired by Defendant Venus Concept, first introduced the ARTAS Robotic Hair Restoration System to alleviate the human shortcomings of manual FUE surgery. Restoration Robotics' flagship product is a robot that uses artificial intelligence algorithms to identify the best hair follicles to transplant and then employs a robotic arm to harvest them, automating the extraction phase of FUE surgery.

4.      In 2018, Restoration Robotics revealed the newest version of its robotic hair restoration system: the ARTAS iX. Unlike its previous design, the ARTAS iX promised to perform *all three steps* of "graft harvesting, recipient site making, and now, *implantation*" (emphasis added).

5.      Restoration Robotics and subsequently Venus Concept uniformly marketed the ARTAS iX system to physicians nationwide as a comprehensive solution for robotic FUE surgery. Nearly all of the marketing materials used to promote ARTAS iX called special attention to its implantation capabilities, which made the device a first-of-its-kind. Restoration Robotics promised physicians that the ARTAS iX system, which cost nearly double the price of the former ARTAS system, would allow physicians to realize higher revenues on a per surgery basis with the new robotic implantation feature. These representations, among others specified herein, were part of a standard sales practice used to convince physicians to purchase the ARTAS iX.

6.    Unfortunately, Defendant failed to deliver on its promises. The ARTAS iX system does not perform the third step of the surgery—automatic hair implantation—and this key feature of the device has been unavailable since its release, and continues to be unavailable for physicians to use today.

7.    As described in greater detail below, the highly anticipated (and heavily advertised) implantation technology has flaws in its design and/or manufacturing, and these flaws present serious safety risks to patients, preventing Defendant from fully bringing the implantation technology to market, as advertised. Worse, Defendant knew about these flaws in the implantation technology and concealed them at the time it implemented its national marketing campaign touting the ARTAS iX system as a comprehensive FUE surgery solution. To induce physicians to purchase and continue using the ARTAS iX device, Defendant embarked on a massive cover-up scheme by making excuses for its inability to train physicians on how to use the implantation feature of their devices, while knowing that the feature did not exist or could not be used safely in practice.

8.    As a result, physicians who purchased the ARTAS iX, like Plaintiffs, cannot use the ARTAS iX to perform comprehensive FUE surgery, despite promising this to their patients through marketing materials provided by Defendant. They have not been able to increase their procedure revenues as promised by Defendant and many are on the brink of financial ruin, having paid an exorbitant up-front payment on technology that cannot be used. Consequently, these physicians look to their legal remedies in the hopes of obtaining the compensation they are rightfully and legally entitled to recover for the injuries they have suffered as a result of Defendant's deceptive marketing scheme.

9.    Defendant must be held accountable for its deceptive practices and false promises. This class action complaint seeks to compensate purchasers of the ARTAS iX system for their overpayments, lost revenue, and reputational damage caused by Defendant's malfunctioning robot.

**PARTIES**

10.     Plaintiff Boston Robotic Hair Restoration, PLLC is a professional limited liability company organized and existing under the laws of Massachusetts, which at all relevant times had its principal place of business located at 15 Broad Street, Suite 801, Boston, Massachusetts 02109.

11.     Plaintiff Melissa R. Schneider, M.D., PC is a professional corporation organized and existing under the laws of Massachusetts with its principal place of business located at 73 Newbury Street, Boston, Massachusetts 02116.

12.     Defendant Venus Concept Inc. is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located at 128 Baytech Drive, San Jose, California 95134. Defendant Venus Concept acquired and merged with Restoration Robotics, Inc. in March 2019. (Collectively, Venus Concept and its predecessor, Restoration Robotics, are referred to herein as "Defendant.") Defendant does business in the State of California, this District, and across the United States. Defendant developed, designed, and manufactured its products, including the products at issue in this lawsuit, in the State of California. Additionally, Defendant designs, produces, directs, and implements the marketing materials and campaigns for these products from within the State of California. Restoration Robotics' Director of Marketing, Director of Product Marketing, and Director of Product Management were all located in the State of California at the time of the allegations set forth below. Further, Defendant's Regional Sales Managers were instructed to make the representations alleged herein at training events that took place in the State of California. Likewise, Venus Concepts' new product sales and sales contracting is directed from the State of California.

**JURISDICTION AND VENUE**

13.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2), because (i) at least one member of the Class is a citizen of a different state than the Defendant, (ii) the amount in controversy exceeds $5,000,000, exclusive of interests and costs, and (iii) none of the exceptions under that subsection apply in this action.

14.     This Court has personal jurisdiction over Defendant because it conducts business and is headquartered in this District.

15.     Venue is proper pursuant to 28 U.S.C. § 1391(b) because Defendant maintains its headquarters and conducts significant business in this District.

**FACTUAL BACKGROUND**

16.     Hair loss is a reality for many individuals, especially men. Fifty million men in the United States and thirty million women are affected by hair loss. Some individuals may begin gradually losing hair as early as their teens, primarily from their hairline and the crown of the head. Hair loss affects 50% of all males after the age of fifty.

17.     Although hair loss is a natural part of aging, it can be psychologically distressing to those affected. For this reason, hair loss treatment is a multi-billion-dollar industry. It is estimated that the U.S. market size of hair loss restoration and prevention products, measured by revenue, is around $4 billion dollars.

18.     Several preventative and restorative hair loss products make up this market space, such as orally ingested medication, topical lotions and shampoos, laser and light therapies, and relevant here, hair transplantation surgeries.

19.     FUE—or follicular unit extraction—surgery is one such hair transplantation surgery and involves extracting healthy hair follicles and implanting them into the designated areas of the scalp, also known as recipient sites.

20.     Physicians traditionally conduct FUE surgery by using a manual or motorized hand-held device that extracts each individual hair follicle. Physicians must inspect healthy hair follicles and determine the best donor grafts before extracting. Then, the physician creates recipient sites and implants the harvested hair graft. Manual FUE is a time-consuming process and is susceptible to human imprecision.

21.     To address these shortcomings, Restoration Robotics, released the ARTAS Robotic Hair Restoration System. The company's product was designed to reduce human involvement in the critical stages of FUE surgery. The ARTAS System, as described by Restoration Robotics, is

comprised of "the patient chair, the cart, which includes the robotic arm, integrated vision system, artificial intelligence algorithms and a series of proprietary end effectors, which are the various devices at the end of the robotic arm, such as the automated needle and punch, that interact with the patient's scalp and hair follicles and perform various clinical functions." The original ARTAS System was a first-of-its kind robot designed to identify and dissect hair follicular units directly from the scalp and create recipient implant sites, that is, complete the first two steps of an FUE procedure.

22.     To sell the ARTAS products, Defendant relies on a direct sales and marketing team comprised of Regional Sales Managers ("RSMs"), Clinical Trial Managers ("CTMs"), and Practice Success Managers ("PSMs").

23.     RSMs are responsible for coordinating and executing the direct sales of the ARTAS Systems. CTMs are responsible for providing training and education to physicians on the use of the ARTAS System and on how to build their hair restoration practices. Finally, PSMs work alongside physician clients to help them market the ARTAS-based procedure and increase ARTAS brand-awareness. To do so, the company provides physician clients with uniform marketing tools, such as promotional videos to publish to their practice's website, as well as direct mail advertisements, and print ads for magazines and newspapers and brochures, all of which are designed for the physicians to use in order the integrate the ARTAS system into their practices. PSMs also consult physicians on methods to raise awareness of the ARTAS procedure through practice events, public relations, television, and radio advertising and other channels.

A.     **Restoration Robotics Uniformly Marketed the ARTAS iX's Implantation Technology**

24.     In 2018, Restoration Robotics revealed a successor to the ARTAS Robotic Hair Restoration System: the ARTAS iX. According to Restoration Robotics:

> The ARTAS® Robotic Hair Restoration System is the first and only hair restoration system in the world combining robotic and artificial intelligence technology designed to assist surgeons through the most significant and tedious stages of the hair restoration process. It provides the ultimate advanced and comprehensive offering for precise, efficient, and repeatable

hair restoration and automates the most significant aspects of hair transplantation procedures: graft harvesting, recipient site making, *and now, implantation.* ARTAS iX™ is equipped with a 3D-camera stereoscopic vision system with improved 44-micron resolution and a 7-axis robot arm to deliver unmatched procedural analysis, precision, repeatability, and clinical workflow efficiency. (Emphasis added).[1]

25.     Restoration Robotics advertised the ARTAS iX system on its website as "[t]he most advanced hair restoration procedure [that] combines robotic and AI technology for delivering precise and repeatable harvesting with simultaneous recipient site-making **and implantation.**" *See* Figure 1.



**(Figure 1)**

26.     According to Restoration Robotics, the ARTAS iX system also "[a]ccurately identifies and creates optimal recipient sites and simultaneously implants each harvested graft." *See* Figure 2.

---

[1]      *Restoration Robotics Announces Presentation on ARTAS iX™ at the South Beach Symposium in Miami*, GLOBE NEWSWIRE (Feb. 8, 2019), https://bit.ly/3mAsbG2.

**INTELLIGENT, ACCURATE, PRECISE & REPEATABLE**

Advanced 3-Camera Stereoscopic Vision System with 44 micron resolution and 7-axis robot arm:

- Intelligently analyzes and selects grafts from donor area with no risk of linear scarring.
- Accurately identifies and creates optimal recipient sites and simultaneously implants each harvested graft.
- Protects existing terminal hair, maintaining a natural appearance in the donor and implantation areas.

**(Figure 2)**

27.     In nearly every advertisement and marketing material used to promote the ARTAS iX, Restoration Robotics not only represented but also highlighted the robot's ability to implant harvested hair grafts. The uniform message underlying the company's marketing campaign was that the robot's implantation capabilities constituted the biggest and most significant upgrade to the ARTAS iX over the original ARTAS system, which meant—as understood by both the company and the physicians to whom it targeted—that the device eliminated significant physician involvement and ostensibly increased procedure precision.

28.     Defendant knew that the implantation functionality was a key selling point of the ARTAS iX. In Restoration Robotics' Offering Materials, the company described "the commercial launch of our next generation ARTAS® System, called ARTAS® iX System, **which incorporates the implementation functionality** as well as other functionalities . . . ."[2] When faced with an earnings miss in the first quarter of 2018, the company reassured investors during a conference call that the company was simply experiencing "some hesitancy from some of our physician customers to purchase new systems ahead of the availability of the implantation functionality."[3] The company

---

[2]     Restoration Robotics, Inc., Form S-1 Registration Statement at 1 (August 6, 2018), https://bit.ly/3Fud1L0 (emphasis added).

[3]     Venus Concept 2018 Q1 Earnings Call Transcript (May 14, 2018), https://bit.ly/3agNO8z.

1    again acknowledged this material feature on a conference call to investors explaining disappointing

2    financial results for the second quarter of 2018, stating, "We continue to see customer hesitancy due

3    to the anticipated availability of the ARTAS iX System with implantation functionality that was

4    recently cleared by the FDA in March."[4]

5          29.     Restoration Robotics highlighted implantation in all of its advertising of the ARTAS

6    iX, pushing a uniform sales message that the device could perform "harvesting with simultaneous

7    recipient site-making and implantation." It not only leveraged its website and sales representatives

8    to advertise this new implantation feature, but it also showcased the ARTAS iX's implantation

9    capabilities on various television programs and news channels such as the *Dr. Oz Show*, *The Today*

10   *Show*, *NBC News*, and *Good Day New York*.

11         30.     For instance, Restoration Robotics' brand ambassador and spokesperson, Dr.

12   Michael Wolfeld, repeated the ARTAS iX's implantation capability on the *Dr. Oz Show* by stating:

13   "the ARTAS iX, which is the newest version of the robot, can actually make the little holes where

14   the hair goes into and it can actually place the hairs into the little holes."[5] Similarly, on the *Today*

15   *Show*, Dr. Wolfeld, referring to the ARTAS iX, represented that the machine "can actually select

16   the best and the healthiest hair to remove from the back of the head to transplant to the balding

17   areas. This machine can also make the little holes where the hair goes into. It can actually also

18   implant the hair into those little holes."[6]

19         31.     Restoration Robotics' core marketing tool was a promotional video that

20   demonstrated the ARTAS iX in use, and this video was uniformly implemented in Restoration

21   Robotics' marketing campaigns prior to July 2018 (and over the years that followed), including on

22

23

24   _____

25   [4]    Venus Concept 2018 Q2 Earnings Call Transcript (July 30, 2018), https://bit.ly/2WWtLJK.
     [5]    *ARTAS iX In Action With Dr. Oz | ARTAS Robotic Hair Transplant*, ARTAS iX (June 22,
26   2019), https://bit.ly/3Dm1Pyl.
     [6]    *See Dr. Wolfeld Talk all things hair loss and hair restoration on The Today Show! | ARTAS*
27   *Robotic Hair Transplant*, ARTAS iX (July 19, 2019), https://bit.ly/305DCOy.

28

1  its website and direct-to-consumer marketing materials.[7]  The video was also uniformly provided to

2  ARTAS iX owners to be disseminated through their own websites to attract patients. The video

3  promised "Graft Implantation With Robotic & AI Technology" and demonstrated a robotic needle

4  using "intelligent implantation" to implant grafts into recipient sites.

5         32.    Defendant Venus Concept continued to use this video to promote the ARTAS iX and

6  to make similar or substantially similar representations about the ARTAS iX's "intelligent

7  implantation" capabilities after its acquisition and merger with Restoration Robotics.

8         33.    The ARTAS iX's intelligent implantation capability is the key selling point not only

9  for physicians but also for patients seeking hair transplantation surgery. Restoration Robotics

10  frequently and uniformly promoted the notion that the ARTAS iX is superior to other FUE methods

11  because it avoids human involvement and imprecision, particularly in the implantation stage of the

12  procedure, which is the most tedious and prone to human error. As a result, both physicians and

13  their patients expected better post-surgery results with the ARTAS iX, including the avoidance of

14  potential scarring that is often associated with non-robotic FUE surgeries.

15         34.    Restoration Robotics likewise marketed a message to physicians that hair transplant

16  patients would be willing to pay a premium for hair transplantation surgery utilizing the ARTAS iX

17  system, over procedures such as manual FUE surgery. *See* Figure 3. In fact, Restoration Robotics

18  stated that physicians can charge as much as $12,500 per procedure leading to seven figure annual

19  revenues. That fee is double the market rate for a manual FUE procedure.

**THE ARTAS iX™ SYSTEM HAS REVOLUTIONIZED HAIR RESTORATION THROUGH ROBOTIC:**

· Extraction
· Site making
· Implantation
· Profitability facilitation

**DELIVER BEST IN CLASS OUTCOMES THROUGH THE PRECISION ONLY THE ARTAS iX SYSTEM CAN PROVIDE**

· Natural and permanent results
· No stitches, staples, or linear scarring
· Minimal discomfort

**(Figure 3)**

---

[7]    Restoration Robotics, Inc., *The ARTAS iX Robotic Hair Restoration System*, VIMEO, https://bit.ly/3llg0gR (last visited Oct. 7, 2021).

35.     The additional implantation functionality of the ARTAS iX also commanded a higher price tag for the robot itself. Restoration Robotics markets and sells the ARTAS iX system to physicians for approximately $400,000—nearly double the cost of the original ARTAS system without the automatic implantation capability.

**B.     The ARTAS iX System Does Not Perform Implantation**

36.     Unfortunately, the ARTAS iX system does not perform robotic hair implantation— deeming the $200,000 premium physicians paid over the original ARTAS system entirely pointless.

37.     Upon information and belief, no physician who has purchased the ARTAS iX to date has been able to routinely perform comprehensive FUE surgery using the ARTAS iX device, and as promised to patients, because the implantation technology is not available. It likely never existed, and certainly never performed as advertised.

38.     To Plaintiffs' knowledge, only one physician (one of the device's first purchasers, located in California) has ever had an opportunity to even *attempt* using the implantation technology, and that experience was rife with hazards and errors. On or around February 22, 2019, the California physician, with a CTM on-site, attempted the advertised "simultaneous recipient site-making and implantation," but observed the grafts popping out of their sites after being implanted. He also reported that the robot's needle punched the patient too hard, causing serious discomfort. Defendant's on-site CTM witnessed and reported the implantation incident to Defendant. To Plaintiffs' knowledge, no other physicians, including Plaintiffs, have been able to use the implantation technology since.

39.     Defendant had unique and superior knowledge of these defects and operational problems since at least February 2019 (at the latest), yet in furtherance of its deceptive marketing scheme, Defendant concealed and, up to present day, continues to conceal such defects and operational problems from Plaintiffs and the other physicians who purchased the ARTAS iX.

40.     Upon information and belief, Defendant knew about the technology's defects long before February 2019, and this was the reason CTMs uniformly backpedaled training on the implantation feature of the ARTAS iX.

41.     With this knowledge of the technology's defects, Defendant, upon information and belief, uniformly instructed its CTMs not to train ARTAS iX adopters to use this feature. Instead, CTMs uniformly provided excuses, such as that the individual physician is not personally ready to master the technology. Upon information and belief, Defendant's CTMs are uniformly instructed to tell physicians that they must be trained in stages—harvesting/extraction first, site-making second, and then implantation at a much later date—in order to postpone the use of the implantation technology until Defendant can correct the defects, without having to come clean to its customers and investors. In the meantime, the implantation technology is utterly non-existent to physicians, who rely on the training and technical support of Defendant's CTMs to incorporate the ARTAS iX in their practices.

42.     Physicians paid a premium over the original ARTAS system and must pay expensive annual maintenance fees to maintain the ARTAS iX device. Patients, too, pay a premium for FUE surgery performed by the ARTAS iX device, with the expectation that all three stages of the surgery will be performed using the device's artificial intelligence. Yet physicians who purchased the ARTAS iX device must continue to manually implant harvested hair grafts during surgery. This means physicians who purchased the ARTAS iX cannot deliver the promised benefits of robotic implantation to prospective clients, such as greater accuracy, less human error, and less visible scarring. In turn, physicians must reduce the price they can charge per procedure.

43.     The ARTAS iX not only fails to provide the economic benefits bragged about in Defendant's advertising materials. In fact, the device has become an economic drag on Plaintiffs' practices, as they were required to spend an inordinate amount of time learning to use a machine that has become little more than an expensive coatrack. Many purchasers, like Plaintiffs, have been forced to put the device in storage because they cannot afford to maintain the device with its diminished value proposition.

44.     Even after numerous complaints by physicians, Restoration Robotics failed (and now Venus Concept continues to fail) to remedy the issue with the ARTAS iX and provide the paid-for robotic hair implantation capability. That is because the implantation technology is plagued with

CLASS ACTION COMPLAINT                    12

defects and safety issues, which the company continues to conceal. Defendant has likewise refused to recall the ARTAS iX.

### FACTS SPECIFIC TO PLAINTIFFS

45. Plaintiff Boston Robotic Hair Restoration entered into a contract to purchase the ARTAS iX for $400,187.50 in September 2018.

46. Plaintiff Melissa R. Schneider, M.D., PC entered into a contract to purchase the ARTAS iX for $399,000.00 in February 2019.

47. Both Plaintiffs viewed the promotional video described above, as well as other representations made by Restoration Robotics through its uniform marketing campaign, which uniformly advertised that the ARTAS iX is capable of performing robotic FUE surgery including hair "harvesting with simultaneous recipient site-making and implantation."

48. Plaintiffs relied on Defendant's uniform marketing materials highlighting the ARTAS iX's implantation functionality, including the promotional video described above. As a result, they entered into purchase contracts for the ARTAS iX, proffered payment to Defendant, and took delivery of the ARTAS iX.

49. Plaintiffs never received the promised robotic hair implantation capability of their ARTAS iX. Accordingly, Plaintiffs were forced to significantly reduce the prices they charged per procedure, and annually are losing hundreds of thousands of dollars in revenue. Both Plaintiffs have discontinued the use of the ARTAS iX system because of its negative value proposition, as described above, as well as the unforeseen safety risks attendant to the device, described below.

50. Plaintiffs have also experienced malfunctions with the ARTAS iX's "intelligent" technology unrelated to its implantation stages, i.e., when using the device to perform graft extractions with their patients during the harvesting stage. Plaintiffs have both experienced incidences where the robot's arm appeared to be unstable and collided with a patient's head outside of the grafting grid, resulting in patient distress and the need to immediately stop the procedure. Plaintiffs reported these incidences to Restoration Robotics immediately and were forced to compensate their disgruntled patients out of their own pockets. Plaintiff Schneider experienced two

1    collision incidences and immediately retired the device to avoid further damage to her reputation.

2    Upon information and belief, these collision incidences stem from other flaws in the design and

3    manufacturing of the ARTAS iX.

4        51.    Plaintiffs were informed by their CTMs that training on implantation could not occur

5    until training on harvesting and site-making was complete, and Plaintiffs reasonably believed these

6    representations. Accordingly, Plaintiffs were further delayed in discovering the misrepresentations

7    alleged herein.

8        52.    Had Plaintiffs known that the ARTAS iX would not perform robotic hair

9    implantation or would collide with patient skulls as described above, they would not have purchased

10   the ARTAS iX.

11       53.    As a result, Plaintiffs suffered monetary damages from the purchase of the ARTAS

12   iX machine. Plaintiffs have also suffered a loss of revenue for having to reduce the prices of their

13   FUE surgery using the ARTAS iX machine, as well as lost expectation damages when they were

14   forced to ultimately retire their devices due to their negative value proposition. Plaintiffs have also

15   suffered reputational damage as a result of failing to meet their patients' expectations and putting

16   their patients in danger of potential safety risks.

17   **CLASS ALLEGATIONS**

18       54.    **Class Definition:** Plaintiffs Boston Robotic Hair Restoration, PLLC and Melissa R.

19   Schneider, M.D., PC bring this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and

20   Rule 23(b)(3) on behalf of themselves and a Class of similarly situated individuals defined as

21   follows:

22       All individuals and businesses in the United States who purchased the ARTAS iX.

23

24   The following people are excluded from the Class: (1) any Judge or Magistrate presiding over this

25   action and the members of their family; (2) Defendant, Defendant's subsidiaries, parents,

26   successors, predecessors, and any entity in which the Defendant or its parents have a controlling

27   interest and their current or former employees, officers and directors; (3) persons who properly

28   CLASS ACTION COMPLAINT                                     14

1  execute and file a timely request for exclusion from the Class; (4) persons whose claims in this

2  matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiffs' counsel and

3  Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded

4  persons.

5        55.    **Numerosity**: The exact number of members of the Class is unknown and is not

6  available to Plaintiffs at this time, but individual joinder in this case is impracticable. The Class

7  likely consists of hundreds of individuals. Members of the Class can be easily identified through

8  Defendant's records.

9        56.    **Commonality and Predominance**: There are many questions of law and fact

10  common to the claims of Plaintiffs and the other members of the Class, and those questions

11  predominate over any questions that may affect individual members of the Class. Common

12  questions for the Class include but are not limited to the following:

13          a.   Whether Defendant's conduct constitutes fraud;

14          b.   Whether Defendant violated Cal. Bus. & Prof. Code §§ 17200, *et seq.* ("UCL");

15          c.   Whether Defendant violated Cal. Bus. & Prof. Code §§ 17500, *et seq.* ("FAL");

16          d.   Whether Defendant breached its contract; and

17          e.   Whether Defendant was unjustly enriched.

18        57.    **Typicality:** Plaintiffs' claims are typical of other members of the Class, in that

19  Plaintiffs and the members of the Class sustained damages arising out of Defendant's uniform

20  wrongful conduct.

21        58.    **Adequate Representation**: Plaintiffs will fairly and adequately represent and protect

22  the interests of the Class and have retained counsel competent and experienced in complex class

23  actions. Plaintiffs have no interest antagonistic to those of the Class, and Defendant has no defenses

24  unique to Plaintiffs.

25        59.    **Policies Generally Applicable to the Class**: This class action is appropriate for

26  certification because Defendant has acted or refused to act on grounds generally applicable to the

27  Class as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible

28

1   standards of conduct toward the members of the Class, and making final injunctive relief

2   appropriate with respect to the Class as a whole. Defendant's policies challenged herein apply and

3   affect members of the Class uniformly and Plaintiffs' challenge of these policies hinges on

4   Defendant's conduct with respect to the Class as a whole, not on facts or laws applicable only to

5   Plaintiffs. Plaintiffs and the members of the Class have suffered harm and damages as a result of

6   Defendant's unlawful and wrongful conduct.

7   60.   **Superiority**: This case is also appropriate for class certification because class

8   proceedings are superior to all other available methods for the fair and efficient adjudication of this

9   controversy because joinder of all parties is impracticable. The damages suffered by the individual

10   members of the Class will likely be relatively small, especially given the burden and expense of

11   individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would

12   be virtually impossible for the individual members of the Class to obtain effective relief from

13   Defendant's misconduct. Even if members of the Class could sustain such individual litigation, it

14   would still not be preferable to a class action because individual litigation would increase the delay

15   and expense to all parties due to the complex legal and factual controversies presented in this

16   Complaint. By contrast, a class action presents far fewer management difficulties and provides the

17   benefits of single adjudication, economies of scale, and comprehensive supervision by a single

18   Court. Economies of time, effort, and expense will be fostered and uniformity of decisions ensured.

19   61.   Plaintiffs reserve the right to revise the foregoing "Class Allegations" and "Class

20   Definition" based on facts learned through additional investigation and in discovery. To the extent

21   not all issues or claims, including the amount of damages, can be resolved on a class-wide basis,

22   Plaintiffs invoke Federal Rule of Civil Procedure 23(c)(4), reserving the right to seek certification

23   of a class action with respect to particular issues, and Federal Rule of Civil Procedure 23(c)(5),

24   reserving the right to divide the class into subclasses.

**COUNT I**
**Fraudulent Inducement**
**(On behalf of Plaintiffs and the Class)**

27   62.   Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

CLASS ACTION COMPLAINT                    16

63.     Defendant fraudulently induced Plaintiffs and the Class to enter into Purchase Agreements by making the false and misleading representations alleged herein about the ARTAS iX. Specifically, Defendant represented in advertisements of the ARTAS iX system that the device has the capability to robotically harvest hair grafts and simultaneously implant them, which they promoted to the general public in a uniform marketing scheme, and which Plaintiffs and the Class saw, and which led Plaintiffs and the Class to enter into Purchase Agreements.

64.     Defendant knew (or should have known) these representations were incorrect at the time those representations were made based on Defendant's superior knowledge about the abilities, benefits, capabilities, and performance of the ARTAS iX. Defendant made these representations and uniformly and systematically highlighted them while advertising the ARTAS iX because Defendant knew that Plaintiffs, the Class, and other members of the general public would rely on these representations in deciding whether to expend significant sums of money to purchase the ARTAS iX.

65.     Defendant had and held itself out as having unique and superior knowledge of the performance of the ARTAS iX and anticipated, hoped, and/or knew that Plaintiffs and the Class would trust in and justifiably rely on the aforementioned representations to their detriment by purchasing the ARTAS iX.

66.     Defendant intended that the deceptive and fraudulent misrepresentation about the ARTAS iX's capabilities would induce buyers to reply upon its representations and act by purchasing the machine.

67.     Defendant's egregious conduct—which caused the damages sustained by Plaintiffs and the Class and was part of a pattern of similar conduct aimed and directed not only at Plaintiffs and the Class, but at the public generally—pertaining to a medical device which suffered serious defects amounts to such a gross, wanton and willful fraud, dishonest, and malicious wrongdoing as to involve a high degree of moral culpability and turpitude, which demonstrates such wanton fraud, dishonesty and malicious wrongdoing as to imply a criminal indifference to civil obligations.

68.     Defendant received money as a result of Plaintiffs and the Class members purchasing a product that did not meet the advertised specification. Accordingly, Plaintiffs and the Class members have suffered harm in the form of lost money proffered to Defendant in justifiable reliance on its representations of material fact.

69.     As such, Plaintiffs, on behalf of themselves and a Class of similarly situated individuals, seek damages from the Defendant's unlawful conduct.

**COUNT II**
**Fraudulent Concealment**
**(On behalf of Plaintiffs and the Class)**

70.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

71.     Defendant had superior knowledge of the defects and problems with the ARTAS iX alleged herein, as well as material facts contradicting the representations it made to Plaintiffs and the Class, from, among other sources, its own internal testing and reporting and safety incidences relayed to it by physicians (including those described above), all of which Defendant had a duty to disclose, yet Defendant concealed this information with the intent to defraud Plaintiffs and the Class. Such information was not available to the general public or, comprehensively, to Plaintiffs and the Class and it could not have been discovered by Plaintiffs and the Class with the exercise of reasonable diligence.

72.     Defendant also had a duty to disclose the aforementioned defects, problems, and material facts about the ARTAS iX's implantation capabilities because it made representations to Plaintiffs and the Class—both voluntarily through advertisements and in response to direct inquiries from Plaintiffs and the Class—that affirmed the ability of the ARTAS iX to perform "intelligent implantation" as advertised, but which were ambiguous, deceptive, false, misleading and, at best, half-truths, and which required additional disclosure, specifically of the aforementioned defects, problems, and material facts, to avoid misleading Plaintiffs and the Class about the ARTAS iX's capabilities and value proposition.

73.     Defendant intended to defraud Plaintiffs and the Class by concealing and failing to disclose the aforementioned defects, problems, and material facts. Had these defects, problems, and

1    material facts been disclosed to Plaintiffs and the Class, and not concealed by Defendant, no

2    Plaintiff or member of the Class would have purchased an ARTAS iX. Moreover, Plaintiffs and the

3    Class would not have subjected their patients to the ARTAS iX. As a result, Plaintiffs and the Class

4    sustained not only economic damages in the form of overpayment and lost revenue from their

5    inability to perform comprehensive robotic FUE surgery, but also damage to their reputations.

### COUNT III
### Negligent Misrepresentation and/or Negligent Omission
### (On behalf of Plaintiffs and the Class)

8    74.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

9    75.    Defendant made the representations specified herein as to the "intelligent

10   implantation" capabilities of the ARTAS iX to Plaintiffs and the Class for purpose of selling them

11   the ARTAS iX, all while expecting and/or knowing that they would rely thereon in purchasing the

12   ARTAS iX.

13   76.    Defendant was reckless or, at a minimum, careless in making the aforementioned

14   representations, as it knew (or should have known) those representations were false.

15   77.    Defendant intentionally made the aforementioned representations to Plaintiffs and

16   the Class to falsely advise them of the purported benefits and increased profits they would obtain by

17   purchasing the ARTAS iX. Plaintiffs and the Class justifiably relied on the foregoing to their

18   detriment, as Defendant had superior knowledge of the design, performance, and capabilities of the

19   ARTAS iX.

20   78.    Defendant cultivated a relationship of confidence and trust with Plaintiffs and the

21   Class. Even after Plaintiffs and the Class purchased the ARTAS iX, they continued to rely on

22   Defendant and its agents to train them and provide guidance on the use of the ARTAS iX and

23   justifiably relied on Defendant and its agents to inform them about any defects, problems, or

24   material facts. Due to their justifiable reliance, Plaintiffs and the Class were delayed in discovering

25   the defects alleged herein and continued to market the ARTAS iX to their patients and to use the

26   device on their patients.

79.    As a result of their reliance on Defendant's advertisements, as well as their reliance on Defendant and its agents to inform them of any defects with the ARTAS iX, Plaintiffs and the Class have sustained damages to their reputation caused by their continued promotion and use of the ARTAS iX device, despite its defective performance.

**COUNT IV**
**Violation of the Consumer Legal Remedies Act**
**Cal. Civ. Code. §§ 1750 *et seq.***
**(On Behalf of Plaintiffs and the Class)**

80.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

81.    The CLRA, Cal. Civ. Code. §§ 1750 *et seq.*, sets forth a list of prohibited "unfair or deceptive" practices in a "transaction" relating to the sale of "goods" or "services" to a "consumer."

82.    The Legislature's intent in promulgating the CLRA is reflected in Section 1760, which mandates that its terms are to be "liberally construed and applied to promote its underlying purposes, which are to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection."

83.    Defendant's ARTAS iX constitutes a "good" under Cal. Civ. Code § 1761(a), and the concomitant training/support provided by Defendant as a condition of sale constitutes a "service" under Cal. Civ. Code § 1761(b).

84.    Plaintiffs are "consumer(s)" under Cal. Civ. Code § 1761(d) and have suffered damage in the form of overpayment, lost revenue, and reputational damage as a result of the use or employment by Defendant of the methods, acts, or practices set forth below, which are unlawful under Cal. Civ. Code § 1770(a).

85.    Defendant violated and continues to violate the CLRA by engaging in the following deceptive acts or practices with respect to its ARTAS iX:

(a)    Defendant uniformly marketed the ARTAS iX as being capable of performing "intelligent implantation," when at the time of sale, it was not (and still is not), and perpetuated this deception through its CTMs, who promised later training on the robot's "intelligent implantation" features while knowing these features were unusable at the time of their representations, thereby

1   representing that its goods or services "have sponsorship, approval, characteristics . . . uses,

2   benefits, or quantities that they do not," in violation of Cal. Civ. Code § 1770(a)(5);

3        (b)    Defendant uniformly marketed the ARTAS iX as being capable of performing

4   comprehensive robotic FUE surgery, when at the time of sale, it did not (and still does not) intend to

5   provide the training necessary for physicians to use the robot's alleged "intelligent implantation,"

6   thereby "representing that goods or services are of a particular standard, quality, or grade . . . if they

7   are of another," in violation of Cal. Civ. Code § 1770(a)(7);

8        (c)    Defendant uniformly advertised the ARTAS iX as being capable of performing

9   "intelligent implantation" with an intent to postpone (or prevent altogether) the training necessary

10  for physicians to use this feature, thereby "advertising goods or services with intent not to sell them

11  as advertised," in violation of Cal. Civ. Code § 1770(a)(9);

12       (d)    Defendant uniformly promoted a marketing message representing that purchasers of

13  the ARTAS iX would be able to perform "intelligent implantation" (and implying, by virtue of the

14  ongoing relationship between Defendant and purchasers of its products as described above, that

15  training on this feature would be supplied so that it could be implemented in practice), when the

16  purchase of an ARTAS iX does not, in fact, enable physicians to perform this function, thereby

17  "representing that a transaction confers or involves rights, remedies, or obligations that it does not

18  have or involve," in violation of  Cal. Civ. Code § 1770(a)(14), and "representing that the subject of

19  a transaction has been supplied in accordance with a previous representation when it has not," in

20  violation of Cal. Civ. Code § 1770(a)(16);

21       86.    As a result of Defendant's unlawful conduct, Plaintiffs suffered economic damages

22  as stated herein.

23       87.    Pursuant to Cal. Civ. Code § 1782(a), Plaintiffs served Defendant with written notice

24  of their claim that Defendant engaged in the deceptive acts and practices alleged herein and with a

25  demand for the damages described herein, on behalf of themselves and all Class members, in

26  February 2021. After thirty (30) days, Defendant failed to take any action to correct, repair, replace,

27  or otherwise rectify Plaintiffs' ARTAS iX systems, nor did it take any action, to Plaintiffs'

28

knowledge, to make the appropriate correction, repair, replacement, or other remedy of the goods and services sold to the Class.

88.     Plaintiffs, on behalf of themselves and the Class, seek damages in an amount to be proven at trial, injunctive relief to stop Defendant's misleading marketing scheme, and an award of attorneys' fees and costs.

**COUNT V**
**Violation of California's Unfair Competition Law**
**Cal. Bus. & Prof. Code §§ 17200, *et seq.***
**(On behalf of Plaintiffs and the Class)**

89.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

90.     California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*, protects both consumers and competitors by promoting fair competition in commercial markets for goods and services.

91.     The UCL prohibits any unlawful, unfair, or fraudulent business act or practice, including the employment of any deception, fraud, false pretense, false promise, misrepresentation, or concealment, suppression, or omission of any material fact. A business practice need only meet one of the three criteria to be considered unfair competition.

92.     The specifications and capabilities of a product are material terms of a transaction because it directly affects a buyer's choice of, or conduct regarding, whether to purchase a product. Any deception or fraud related to the specifications or capabilities of a product is materially misleading.

93.     As described above, Defendant has engaged in a deceptive business practice by falsely representing that the ARTAS iX has the capability to perform FUE surgery by robotically harvesting hair grafts and simultaneously implanting them.

94.     Defendant's representations were, in fact, false. Defendant's ARTAS iX does not perform robotic hair graft implantation.

95.     Defendant has violated the fraudulent prong of the UCL by knowingly making false representations to buyers regarding the capabilities of the ARTAS iX.

96.     Reasonable purchasers are likely to be, and Plaintiffs and the putative Class were, deceived by Defendant's misrepresentations.

97.     Defendant also violated the UCL's unfair prong by causing substantial injury to Plaintiffs and the Class through its fraudulent conduct described above. The injuries caused by Defendant's unfair conduct are not outweighed by any countervailing benefits to purchasers or competition, and the injury is one that purchasers themselves could not have reasonably avoided. Given the information asymmetry between Defendant and purchasers regarding the true capabilities of the ARTAS iX, Defendant knew or had reason to know that Plaintiffs and the Class could not have reasonably known or discovered the falsity of representations about the ARTAS iX.

98.     Defendant's fraudulent and unfair conduct occurred during the marketing, distribution, and sale of the ARTAS iX, and therefore occurred in the course of Defendant's business practices.

99.     Defendant's fraudulent and unfair conduct directly and proximately caused Plaintiffs and the Class actual monetary damages in the form of the price paid for the ARTAS iX and loss of revenue for robotic FUE surgery.

100.    But for Defendant's conduct as described herein, Plaintiffs and the Class would not have purchased ARTAS iX or would have paid substantially less for it.

101.    Pursuant to Cal. Bus. & Prof. Code § 17203, Plaintiffs seek an order (1) requiring Defendant to cease the unfair practices described herein; (2) requiring Defendant to restore to Plaintiffs and each Class member any money acquired by means of unfair competition (restitution); and, (3) awarding reasonable costs and attorneys' fees pursuant to Cal. Code Civ. Proc. § 1021.5.

**COUNT VI**
**Violation of California's False Advertising Law**
**Cal. Bus. & Prof. Code §§ 17500, *et seq.***
**(On behalf of Plaintiffs and the Class)**

102.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

103.    California's False and Misleading Advertising Law ("FAL") prohibits corporations from intentionally disseminating advertisements for products or services that are "unfair, deceptive, untrue, or misleading." Cal. Bus. & Prof. Code § 17500.

104.    Defendant has disseminated unfair, deceptive, untrue, and misleading advertisements stating that Defendant's ARTAS iX has the capability to perform FUE surgery by robotically harvesting hair grafts and simultaneously implanting them. As detailed above, these advertisements are false and misleading and were designed to convince buyers to purchase Defendant's product. In short, Defendant's advertisements are false because they advertise specifications that Defendant knew the ARTAS iX did not have.

105.    Indeed, a reasonable person is likely to be deceived by Defendant's advertisements. Purchasers had no way to discover the falsity of Defendant's advertisements and representations.

106.    Defendant knew or should have known when creating and disseminating these advertisements that they contained materially false and misleading information.

107.    Defendant's conduct directly and proximately caused Plaintiffs and the Class actual monetary damages in the form of the price paid for the ARATAS iX.

108.    Plaintiffs seek an order (1) requiring Defendant to cease the false advertising practices described herein; (2) requiring Defendant to restore to Class members any money acquired by means of false advertising (restitution); and, (3) awarding reasonable costs and attorneys' fees pursuant to Cal. Code Civ. Proc. § 1021.5.

**COUNT VII**
**Breach of Implied Warranty**
**(On behalf of Plaintiffs and the Class)**

109.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

110.    A warranty that the ARTAS iX shall be merchantable was implied in the Purchase Agreement entered into between Defendant and Plaintiffs and the Class because Defendant is a merchant who deals in goods of that kind and holds itself out as having knowledge and skill peculiar to the surgical robotic industry by advertising, marketing, and representing themselves to be the worldwide leader in robotic hair transplant solutions.

111.    The ARTAS iX systems delivered and installed by Defendant to Plaintiffs and the Class are not fit for the ordinary purpose for which such devices are used—to perform comprehensive FUE surgery—because the ARTAS iX, when used in customary, usual and reasonably foreseeable manners, failed to perform "intelligent implantation" and suffered from other serious operational deficiencies and errors which created a safety risk to patients, as alleged above. Thus, Defendant breached the implied warranty of merchantability and Plaintiffs and the Class are entitled to recover all of their damages from Defendant.

112.    Defendant also breached the implied warranty of fitness for a particular purpose. Plaintiffs and the Class specified to Defendant, through its agents, that they required an ARTAS iX capable of, among other things, "intelligent implantation." Plaintiffs and the Class relied on the skill and judgment of Defendant, which holds itself out to be the worldwide leader in robotic hair transplant solutions, to furnish a suitable robot capable of meeting or exceeding their expectations for "intelligent implantation," a fact that was conveyed by Plaintiffs and the Class to Defendant through its agents. The ARTAS iX systems that Defendant sold to Plaintiffs and the Class were not fit for the particular purpose for which they were required in that, among other things detailed herein, they failed to perform "intelligent implantation."

**COUNT VIII**
**Breach of Contract**
**(On behalf of Plaintiffs and the Class)**

113.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

114.    Plaintiffs and Defendant entered into a valid and enforceable agreement whereby Defendant promised to sell the ARTAS iX with all its advertised capabilities, including the capability to robotically harvest hair grafts and simultaneously implant them. Plaintiffs and the Class, in return, promised to pay money for the ARTAS iX.

115.    Plaintiffs proffered payment to Defendant and took delivery of the ARTAS iX.

116.    Defendant's failure to meet its promises and deliver the ARTAS iX without the capability to robotically harvest hair grafts and simultaneously implant them constitutes a breach of

its contracts with Plaintiffs and the Class. Plaintiffs and the Class did not receive the full benefit of the bargain.

117.    As a result, Plaintiffs suffered significant monetary damages in the amount of the difference between the price they paid for the ARTAS iX and the actual diminished value of its product.

118.    Plaintiffs and the Class also suffered monetary damages from revenue lost on performing FUE surgery using the ARTAS iX.

**COUNT IX**
***In the Alternative to Breach of Contract***
**Unjust Enrichment**
**<u>(On behalf of Plaintiffs and the Class)</u>**

119.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

120.    Plaintiffs and the Class members conferred a benefit to Defendant in the form of money paid for the ARTAS iX.

121.    Defendant appreciates or has knowledge of the benefits conferred upon it by Plaintiffs and the Class members.

122.    Under the principles of equity and good conscience, Defendant should not be permitted to retain any money derived from its sale of the ARTAS iX as it does not provide advertised robotic hair implantation capability.

123.    Had Plaintiffs and the Class members been aware that the ARTAS iX does not robotically harvest hair grafts and simultaneously implant them, as represented by Defendant, Plaintiffs and the Class would not have purchased the ARTAS iX or would have paid significantly less for the product they received.

**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiffs Boston Robotic Hair Restoration, PLLC and Melissa R. Schneider, M.D., PC, individually and on behalf of a Class of similarly situated individuals, prays for the following relief:

1     A.     Certifying this case as a class action on behalf of the Class defined above, appointing

2  Plaintiffs as the representatives of the Class, and appointing their counsel as class counsel;

3     B.     Declaring that Defendant's actions, as set out above, constitute fraudulent

4  inducement, fraudulent concealment, negligent misrepresentations and/or negligent omissions,

5  breach of contract, violations of the CLRA, the UCL, the FAL, and/or unjust enrichment;

6     C.     Awarding damages, including statutory and punitive damages where applicable;

7     D.     Awarding Plaintiffs and the Class their reasonable litigation expenses and attorneys'

8  fees;

9     E.     Awarding Plaintiffs and the Class pre- and post-judgment interest, to the extent

10  allowable;

11     F.     Awarding such other injunctive and declaratory relief as is necessary to protect the

12  interests of Plaintiffs and the Class; and

13     G.     Awarding such other and further relief as the Court deems reasonable and just.

14

## DEMAND FOR JURY TRIAL

15     Plaintiffs demand a trial by jury for all issues so triable.

16

Respectfully submitted,

17

18                     **BOSTON ROBOTIC HAIR RESTORATION,**

**PLLC and MELISSA R. SCHNEIDER, M.D.,**

19                     **PC,** individually and on behalf of all other similarly situated,

20

21  Dated: October 8, 2021          By:  /s/ Lily E. Hough

One of Plaintiffs' Attorneys

22

Rafey Balabanian (SBN 315962)

23                     rbalabanian@edelson.com

Lily Hough (SBN 315277)

24                     lhough@edelson.com

150 California Street, 18th Floor

25                     San Francisco, California 94111

Tel: 415.212.9300

26                     Fax: 415.373.9435

27

*Attorneys for Plaintiffs and the Putative Class*

28  CLASS ACTION COMPLAINT          27